UNITED STATES DISTRICT COURT
EASTERN DISTRCIT OF MICHIGAN
SOUTHERN DIVISION

Roy Ryans,

PLAINTIFF,

vs.                                                    Case No.
                                                       Hon.

Ferrellgas, Inc.,
*a Delaware corporation,*

DEFENDANT.

| | |
|---|---|
| **GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C.**<br>Ray Carey (P33266)<br>Attorneys for Plaintiff<br>30500 Northwestern Hwy. Suite 425<br>Farmington Hills, MI 48334<br>Telephone: (248) 865-0001<br>Facsimile: (248) 865-0002<br>Rcarey@work-lawyers.com | |

## **COMPLAINT AND JURY DEMAND**

Plaintiff Roy Ryans ("Mr. Ryans" or "Plaintiff"), by and through his attorneys, GASIOREK, MORGAN, GRECO, McCAULEY & KOTZIAN, P.C., complains against Defendant Ferrellgas, Inc. ("Defendant" or "Ferrellgas") as follows:

1.      This is an action for discrimination against Plaintiff on account of his race, retaliation, and interference in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.;* and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L.A. §§37.2101, *et seq*., arising out of Plaintiff's former employment relationship with Defendant.

## **PARTIES**

2.     Plaintiff Roy Ryans currently resides in the City of Belleville, Wayne County, State of Michigan.

3.     Defendant is a for profit corporation organized under the laws of the State of Delaware, which maintains its corporate headquarters in Liberty, Missouri, but which also has offices and a place of business in Belleville, Wayne County, State of Michigan.

4.     Plaintiff was employed by Defendant either as a Cylinder/Bulk Driver or Plant Supervisor at Defendant's Belleville, Michigan Service Unit from May 2, 2018, until April 13, 2020, when his employment was wrongfully terminated.

## **JURISDICTION AND VENUE**

5.     The amount in controversy exceeds $75,000 exclusive of interest and costs.

6.     This Court has subject matter jurisdiction over Plaintiff's claims under and pursuant to 28 USC § 1331 (federal question jurisdiction) and 28 USC § 1332 (diversity jurisdiction).

7.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over Plaintiff's state law claims for ELCRA violations.

8.     This Court has personal jurisdiction over Defendant because it maintains offices and facilities and engages in regular and systematic business and other activities within the Eastern District of Michigan and the acts attributed to Defendant that give rise to Plaintiff's claims occurred within the Eastern District of Michigan.

9.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting claims for discrimination against Plaintiff on account of his race, retaliation, and interference in violation of Title VII, which was within the 300-day period after April 13, 2020, the date when Defendant terminated his employment.

10.     The EEOC mailed Notice of Suit Rights to Plaintiff with respect to the above referenced federal charge of discrimination on October 9, 2020, and Plaintiff is filing this complaint to include claims for discrimination against Plaintiff on account of his race, retaliation, and interference in violation of Title VII within the requisite 90-day period after he received the notice.

11.     Venue is proper in this district court pursuant 28 U.S.C. §1391(b) and (c) because Defendant is located within the Eastern District of Michigan

and the events that give rise to this action occurred within the Eastern District of Michigan.

12.     Venue also is convenient in this judicial district.

## STATEMENT OF FACTS

13.     Mr. Ryans is a Black/African American male who was born on March 18, 1965, and he currently is approximately 56 years of age.

14.     Mr. Ryans was hired by Defendant on May 2, 2018, as a Cylinder/Bulk Driver and was employed in this capacity or as a Plant Supervisor at Defendant's Belleville, Michigan Service Unit at all times relevant to his claims and until April 13, 2020, when his employment was wrongfully terminated for discriminatory and retaliatory reasons.

15.     Mr. Ryans was well qualified for the Cylinder/Bulk Driver and Plant Supervisor positions because he had a Class "B" Commercial Driver's License ("CDL") with a Hazmat and tanker endorsement and passed the required Department of Transportation ("DOT") physical and Transportation Security Administration ("TSA") background check.

16.     Mr. Ryans also performed the duties and responsibilities of the Cylinder/Bulk Driver and Plant Supervisor positions in a more than satisfactory manner throughout his employment with Defendant as evinced by the merit

pay increases that he received and his promotion to the Plant Supervisor position on or about September 22, 2019.

17.    During the summer of 2019, Defendant decided to hire someone to serve as a District Manager for its Belleville Service Unit.

18.    Mr. Ryans was qualified for and applied for the position.

19.    Defendant's Caucasian General Manager for the East Lansing Service Center (which included the Belleville Service Unit) decided who was to be selected for the District Manager position.

20.    Defendant's Caucasian General Manager for the East Lansing Service Center did not select Mr. Ryans for the position because of his race.

21.    Defendant's Caucasian General Manager for the East Lansing Service Center instead selected a less qualified Caucasian employee for the position, who became the District Manager on September 1, 2019, because he wanted a Caucasian to fill the position.

22.    At the time of the Caucasian District Manager's selection, the majority of employees who were to report to and who thereafter initially reported to the Caucasian District Manager were Black and Defendant's Caucasian General Manager for the East Lansing Service Center and the new Caucasian District Manager intended to terminate the employment of Black employees and replace them with Caucasian employees.

23.     In early January, 2020, the Caucasian District Manager was reassigned management responsibilities for a Service Unit closer to his residence.

24.      Mr. Ryans was not given the opportunity to replace the District Manager who had been reassigned because of Mr. Ryan's race and because Defendant's Caucasian General Manager for the East Lansing Service Center had decided to replace the District Manager with another Caucasian employee in conjunction with the plan to terminate the employment of Black employees and replace them with Caucasian employees.

25.     Although the employment of the Caucasian employee who replaced the first District Manager was involuntarily terminated by Defendant on January 30, 2020, Mr. Ryans still was not given the opportunity to become District Manager because of Mr. Ryan's race and because the General Manager for the East Lansing Service Center wanted a Caucasian to fill the position in conjunction with the plan to terminate the employment of Black employees and replace them with Caucasian employees.

26.     Instead, the Caucasian District Manager who originally was hired for the position was transferred back to the Belleville Service Unit by Defendant's Caucasian General Manager for the East Lansing Service Center because he wanted a Caucasian in the position and he intended to terminate the employment of Black employees and replace them with Caucasian employees.

27.    In conjunction with the scheme to terminate the employment of Black employees at the Belleville Service Unit and to replace them with Caucasian employees, Defendant's Caucasian General Manager for the East Lansing Service Center promoted Mr. Ryans to the position of Plant Supervisor on or about September 22, 2019.

28.    As a result of this promotion, Mr. Ryans received a pay increase to $23.00 per hour or $47,840.00 annually.

29.    However, Mr. Ryans was not given the authority that previous Caucasian Plant Supervisors exercised in the position because of his race, Defendant's Caucasian General Manager for the East Lansing Service Center and its Caucasian District Manager required Mr. Ryans' to perform certain responsibilities of the District Manger to minimize the District Manager's need to travel to the Belleville Service Unit, and they required him to engage in surveillance of and to report acts and omissions attributed to Black employees to facilitate termination of their employment and their replacement by Caucasian employees.

30.    Mr. Ryans also was the recipient of various racist comments and jokes from Caucasian supervisors and managers while he served as a Plant Supervisor.

31.    In early February, 2020, Mr. Ryans complained to Defendant's Caucasian General Manager for the East Lansing Service Center that Black

employees at the Belleville Service Unit were being disciplined for alleged acts and omissions for which they were not culpable, Black employees at the Belleville Service Unit were being disciplined for certain acts and omissions while similarly situated Caucasian employees who were culpable for similar acts and omissions were not similarly disciplined, and that Caucasian employees who were hired to replace discharged Black employees at the Belleville Service Unit were being hired at rates of pay that were higher than those received by Black employees.

32.    Defendant's Caucasian General Manager for the East Lansing Service Center, its District Manager, and its Human Resources and other representatives did not investigate or respond to Mr. Ryans' complaints.

33.    Instead, on February 10, 2020, Defendant's Caucasian General Manager for the East Lansing Service Center gave Mr. Ryans options to either terminate his employment with Defendant or to be demoted, effective February 16, 2020, to his former Cylinder/Bulk Driver position with an $8,000 per year reduction in pay because of Mr. Ryans' race and because of and in retaliation for Mr. Ryans complaints about race discrimination within the Belleville Service Unit.

34.    Mr. Ryans was shocked and distressed over the unexpected, threatened, and unjustified potential for involuntary termination of his employment and alternative unjustified demotion option, but he opted for the demotion because he needed income and benefits to support himself.

35.    Defendant's Caucasian General Manager for the East Lansing Service Center gave Mr. Ryans the option to take a demotion as a pretext for what he and the Caucasian District Manager's intended, which was to later terminate Mr. Ryans' employment because of Mr. Ryans' race and because of and in retaliation for Mr. Ryans complaints about race discrimination within the Belleville Service Unit.

36.    In conjunction with this scheme, Mr. Ryans was issued a warning on March 2, 2020, by the Caucasian District Manager for alleged acts and omissions for which he was not culpable and for certain acts and omissions for which similarly situated Caucasian employees who were culpable for similar acts and omissions were not similarly disciplined because of Mr. Ryans' race and because of and in retaliation for Mr. Ryans complaints about race discrimination within the Belleville Service Unit.

37.    Mr. Ryans was shocked and distressed by unanticipated imposition of the warning issued to him on March 2, 2020, he refused to acknowledge receipt of it for this reason, and commented that he knew Defendant's Caucasian General Manager for the East Lansing Service Center and the Caucasian District Manager had been planning the termination of his employment because of Mr. Ryans' race and because of and in retaliation for Mr. Ryans complaints about race discrimination within the Belleville Service Unit.

38.     During the period between March 5, 2020, and April 9, 2020, Mr. Ryans was on an approved medical leave of absence because of disabling physical and behavioral health conditions caused by the sudden and unjustified threats to terminate his employment, his sudden and unjustified demotion, the sudden and unjustified of imposition of the March 2, 2020 warning issued to him, and other mistreatment he experienced at the Belleville Service Unit because of Mr. Ryans' race and because of and in retaliation for Mr. Ryans complaints about race discrimination within the  Belleville Service Unit.

39.     Mr. Ryans attempted to return to work from his medical leave on April 7, 2020, but Defendant's representatives prohibited him from doing so because he neglected to provide a certification from his health care provided that he was released for return to work.

40.     Mr. Ryans returned to work from his medical leave on April 9, 2020, after presenting a certification from his health care provided that he was released for return to work.

41.     Defendant's Caucasian General Manager for the East Lansing Service Center and the Caucasian District Manager discriminated against Mr. Ryans because of his race and continued to retaliate against him because of Mr. Ryans complaints about race discrimination within the Belleville Service Unit upon his return from medical leave.

42.     Although Caucasian Cylinder/Bulk Drivers continued to be scheduled to make deliveries on behalf of Defendant despite the adverse effects of the COVID 19 pandemic, Mr. Ryans was not similarly scheduled, but instead he was instructed by the Caucasian District Manager to replace the floor tiles in the Belleville office although Mr. Ryan was not proficient in such tasks and he was not provided with tools and materials necessary to  replace the tiles  because of his race and because of and in retaliation for Mr. Ryans complaints about race discrimination within the Belleville Service Unit and because Defendant's Caucasian General Manager for the East Lansing Service Center and the Caucasian District Manager were looking for pretextual reasons to terminate Mr. Ryans' employment.

43.     On April 13, 2020, Mr. Ryans was notified that his employment with Defendant had been terminated ostensibly because he failed to replace the floor tiles in the Belleville office although Mr. Ryan was not proficient in such tasks and he was not provided with tools and materials necessary to replace the tiles.

44.     Defendant's Caucasian General Manager for the East Lansing Service Center and the Caucasian District Manager terminated Mr. Ryans' employment in conjunction with the scheme initiated by them in February, 2020, because of

Mr. Ryans' race and because of and in retaliation for Mr. Ryans complaints about race discrimination within the Belleville Service Unit.

45.     The purported reasons for the decisions to demote Mr. Ryans, issue the March 2, 2020 warning to him, and to terminate Mr. Ryans employment are not true and are a pre-text for the real reasons, i.e., because of Mr. Ryans' race and in retaliation for Mr. Ryans' complaints about race discrimination within the Belleville Service Unit.

46.     Mr. Ryans was treated differently than similarly situated Caucasian employees who were culpable for similar acts and omissions, but who were not demoted, who were not issued warnings, and whose employment was not terminated because of Mr. Ryans' race and in retaliation for Mr. Ryans' complaints about race discrimination within the Belleville Service Unit.

## COUNT I – VIOLATION OF Title VII
## – RACE DISCRIMINATION

47.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

48.     At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by 42 U.S.C. §§ 2000e(b), 2000e-2(a).

49.    At all times relevant, Defendant's Caucasian General Manager for the East Lansing Service Center, Caucasian District Manager Consumers, and other representatives of Defendant involved in the decisions leading up to and including the decisions to deny Mr. Ryans the District Manger position, demote Mr. Ryans, issue the March 2, 2020 warning to him, and to terminate Mr. Ryans employment were each a "person" as this term is defined by 42 U.S.C. § 2000e(a) and they were each an agent of Defendant with respect to terms and conditions of and the termination of Mr. Ryans' former employment with Defendant, *see* 42 U.S.C. § 2000e(b).

50.    At all times relevant herein, under Title VII and 42 U.S.C. § 2000e-2(a), Plaintiff had a right to employment with Defendant free from discrimination against him based on his race.

51.    Defendant's Caucasian General Manager for the East Lansing Service Center, Caucasian District Manager, and other representatives of Defendant involved in the decisions leading up to and including the decisions to deny Mr. Ryans the District Manger position, demote Mr. Ryans, issue the March 2, 2020 warning to him, and to terminate Mr. Ryans employment violated Ryans' rights under Title VII and 42 U.S.C. § 2000e-2(a) by:

a.    denying Mr. Ryans, the District Manger position in September, 2019, and again in January, 2020, because of his race;

b.      demoting Mr. Ryans without cause and because of his race although he was treated differently based on his race than his similarly situated Caucasian coworkers, effective February 16, 2020;

c.      reducing Mr. Ryans' compensation and benefits without cause and because of his race although he was treated differently based on his race than his similarly situated Caucasian coworkers, effective February 16, 2020;

d.      issuing the March 2, 2020 warning to Mr. Ryans without cause and because of his race although he was treated differently based on his race than his similarly situated Caucasian coworkers;

e.      terminating Mr. Ryans employment without cause and because of his race although he was treated differently based on his race than his similarly situated Caucasian coworkers;

f.      treating Mr. Ryans differently than similarly situated Caucasian employees with respect to application of Defendant's employment policies practices and procedures; and

g.      otherwise discriminating against and disparately treating Mr. Ryans on the basis of his race with respect to compensation and the terms, conditions and privileges of his employment.

52. As a direct and proximate result of Defendant's aforementioned intentional violation of Plaintiff's civil rights as set forth by Title VII and 42

U.S.C. § 2000e-2(a), Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to his personal and professional reputation.

## COUNT II– VIOLATION OF
## TITLE VII – RETALIATION/INTERFERENCE

53.     Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter re-iterated paragraph by paragraph.

54.     At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by Title VII, 42 U.S.C. §§ 2000e(b), 2000e-2(a).

55.     At all times relevant, Defendant's Caucasian General Manager for the East Lansing Service Center, Caucasian District Manager, and other representatives of Defendant involved in the decisions leading up to and including the decisions to deny Mr. Ryans the District Manger position, demote Mr. Ryans, issue the March 2, 2020 warning to him, and to terminate Mr. Ryans employment were each a "person" as this term is defined by Title VII, *see* 42 U.S.C. § 2000e(a), and they were each an agent of Consumers with respect to

terms and conditions of and the termination of Plaintiff's former Consumers

employment, *see* 42 U.S.C. § 2000e(b).

56.   At all times relevant herein, under Title VII and 42 U.S.C. § § 2000e-

2(a), 2000e-3(a), Plaintiff had a right to employment with Defendant free from

retaliation, discrimination or interference because he opposed a violation of

Title VII.

57.   Plaintiff engaged in activity protected by Title when he complained

to Defendant's Caucasian General Manager for the East Lansing Service Center that

Black employees were being disciplined for alleged acts and omissions for which

they were not culpable, Black employees were being disciplined for certain acts and

omissions while similarly situated Caucasian employees who were culpable for

similar acts and omissions were not similarly disciplined, and Caucasian employees

who were hired to replace discharged Black employees were being hired at rates of

pay that were higher than those received by Black employees.

58.   Defendant's Caucasian General Manager for the East Lansing Service

Center, Caucasian District Manager, and other representatives of Defendant

involved in the decisions leading up to and including the decisions to demote

Mr. Ryans, issue the March 2, 2020 warning to him, and terminate Mr. Ryans'

employment violated Plaintiff's rights under Title VII, 42 U.S.C. § § 2000e-2(a),

2000e-3(a), because they took these actions in retaliation for Mr. Ryans'

complaints to Defendant's Caucasian General Manager for the East Lansing Service Center that Black employees were being disciplined for alleged acts and omissions for which they were not culpable, Black employees were being disciplined for certain acts and omissions while similarly situated Caucasian employees who were culpable for similar acts and omissions were not similarly disciplined, and Caucasian employees who were hired to replace discharged Black employees were being hired at rates of pay that were higher than those received by Black employees.

59.    As a direct and proximate result of Defendant's aforementioned intentional violation of Plaintiff's civil rights as set forth in Title VII, 42 U.S.C. § § 2000e-2(a), 2000e-3(a), Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to his personal and professional reputation.

**COUNT III**
**VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT – RACE DISCRIMINATION**

60.    Plaintiff re-alleges and incorporates by reference each and every paragraph of this Complaint as if hereinafter reiterated paragraph by paragraph.

61.     At all times relevant, Defendant was an "employer" of Plaintiff as this term is defined by section 201(a) of the Michigan Elliott-Larsen Civil Rights Act, MCL §§37.2101, et seq. ("ELCRA"). *See* MCL §37.2201(a).

62.     At all times relevant herein, under the ELCRA, Plaintiff had a right to employment with Defendant free from discrimination against her based on his race.

63.     Defendant's Caucasian General Manager for the East Lansing Service Center, Caucasian District Manager, and other representatives of Defendant involved in the decisions leading up to and including the decisions to deny Mr. Ryans the District Manger position, demote Mr. Ryans, issue the March 2, 2020 warning to him, and to terminate Mr. Ryans' employment discriminated against him on account of his race and violated his rights under the ELCRA when they:

a.     denied Mr. Ryans the District Manger position in September, 2019, and again in January, 2020, because of his race;

b.     demoted Mr. Ryans without cause and because of his race although he was treated differently based on his race than his similarly situated Caucasian coworkers, effective February 16, 2020;

c.     reduced Mr. Ryans' compensation and benefits without cause and because of his race although he was treated differently based on his race than his similarly situated Caucasian coworkers, effective February 16, 2020;

     d.    issued the March 2, 2020 warning to Mr. Ryans without cause and because of his race although he was treated differently based on his race than his similarly situated Caucasian coworkers;

     e.    terminated Mr. Ryans employment without cause and because of his race although he was treated differently based on his race than his similarly situated Caucasian coworkers;

     f.    treated Mr. Ryans differently than similarly situated Caucasian employees with respect to application of Defendant's employment policies practices and procedures; and

     g.    otherwise discriminated against and disparately treating Mr. Ryans on the basis of his race with respect to compensation and the terms, conditions and privileges of his employment.

64.    As a direct and proximate result of Defendant's  discrimination on account of Plaintiff's race in violation of the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, bonuses, and other income, both past and future; loss of health, dental, disability, pension and other benefits, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to his personal and professional reputation.

**COUNT IV**
**Retaliation and Interference in Violation of Michigan's Elliott-Larsen**
**Civil Rights Act**

65.    Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if reiterated paragraph by paragraph.

66.    At all material times, Plaintiff was an employee and Defendant was his employer covered by and within the meaning of Michigan's Elliott-Larsen Civil Rights Act("ELCRA"), M.C.L.A. §§ 37.2101, *et seq.*

67.    Retaliation against persons who complain about race discrimination is prohibited by the ELCRA.

68.    Plaintiff engaged in activity protected by the ELCRA when he complained to Defendant's Caucasian General Manager for the East Lansing Service Center that Black employees were being disciplined for alleged acts and omissions for which they were not culpable, Black employees were being disciplined for certain acts and omissions while similarly situated Caucasian employees who were culpable for similar acts and omissions were not similarly disciplined, and Caucasian employees who were hired to replace discharged Black employees were being hired at rates of pay that were higher than those received by Black employees.

69.    Defendant's Caucasian General Manager for the East Lansing Service Center, Caucasian District Manager, and other representatives of Defendant involved in the decisions leading up to and including the decisions to deny Mr.

Ryans the District Manger position, demote Mr. Ryans, issue the March 2, 2020 warning to him, and to terminate Mr. Ryans employment violated Plaintiff's rights under the ELCRA because they took these actions in retaliation for Mr. Ryans' complaints to Defendant's Caucasian General Manager for the East Lansing Service Center that Black employees were being disciplined for alleged acts and omissions for which they were not culpable, Black employees were being disciplined for certain acts and omissions while similarly situated Caucasian employees who were culpable for similar acts and omissions were not similarly disciplined, and Caucasian employees who were hired to replace discharged Black employees were being hired at rates of pay that were higher than those received by Black employees.

70.    As a direct and proximate result of Defendant's aforementioned intentional violation of Plaintiff's civil rights as set forth by the ELCRA, Plaintiff has and will continue to suffer damages, including but not limited to: the loss of employment; the loss of salary, commissions, fringe benefits, and bonuses, both past and future; humiliation, mortification, embarrassment, and shock; mental, emotional and physical pain, suffering, and distress; and damage to his personal and professional reputation.

**WHEREFORE,** Plaintiff requests that this Court enter an Order and Judgment against Defendant and that it award to Plaintiff:

a.      Compensatory damages in an amount in excess of $75,000.00 to which he is found to be entitled, inclusive of back and front pay, incentive compensation and bonuses, and other compensation lost by Plaintiff due to the denial of the District Manager position, his demotion, and the termination of his employment and reimbursement for costs incurred by Plaintiff to replace lost benefits;

b.      Compensatory and punitive damages for violation of Title VII;

c.      Compensatory damages for mental anguish, emotional distress, humiliation and injury to his reputation;

d.      Punitive and/or exemplary damages;

e.      Reasonable attorney fees and costs, including expert witness fees, and pre- and post-judgment interest;

f.      Injunctive or equitable relief to foreclose further violations of the ELCRA and Title VII; and

h.      Such other legal or equitable relief as this Court deems appropriate.

Respectfully submitted,

BY:    */s/ Raymond J. Carey*
       Raymond J. Carey (P33266)
       Attorneys for Plaintiff
       30500 Northwestern Hwy. Ste. 425
       Farmington Hills, MI 48334
Dated: January 7, 2021      (248) 865-0001
       rcarey@work-lawyers.com

## DEMAND FOR TRIAL BY JURY

Plaintiff Roy Ryans, by his attorneys, GASIOREK, MORGAN, GRECO, MCCAULEY & KOTZIAN P.C., demands a trial by Jury.

Respectfully submitted,

**GASIOREK, MORGAN, GRECO,
MCCAULEY & KOTZIAN, P.C.**

BY:     /s/ Raymond J. Carey
        Raymond J. Carey (P33266)
        Attorney for Plaintiff
        30500 Northwestern Hwy, Ste. 425
        Farmington Hills, MI 48334
        (248) 865-0001
        rcarey@work-lawyers.com

Date: January 7, 2021